IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHAUN EDWARD KIMMEL,           )
                               ) Civil Action No. 07 - 338
                               )
     Petitioner,               )
                               ) Judge Terrence F. McVerry
v.                             ) Magistrate Judge Lisa Pupo
                               ) Lenihan
FRANKLIN J. TENNIS; DISTRICT   )
ATTORNEY FOR THE COUNTY OF     )
WESTMORELAND; and the          )
ATTORNEY GENERAL FOR THE       )
STATE OF PENNSYLVANIA,         )
                               )
     Respondents.

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

I.      RECOMMENDATION

        It is respectfully recommended that the Petition for Writ
of Habeas Corpus be denied and that a certificate of appealability
be denied.

II.     REPORT

        Petitioner, Shaun Edward Kimmel, has filed a Petition for
Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 wherein he
raises a single claim of insufficiency of the evidence with regards
to his conviction of Criminal Conspiracy to Commit Aggravated
Assault.  For the reasons set forth below, his Petition should be
denied.

A. Mootness

        Respondent first asserts that the Petition has become
moot because Petitioner has finished serving his entire sentence.

In this regard, Article III, § 2 of the Constitution limits the jurisdiction of the federal courts to actual "cases or controversies."  This is a "bedrock requirement" and requires the plaintiff to establish that he or she has proper "standing" to sue. Raines v. Byrd, 521 U.S. 811, 818 (1997) (internal citations omitted).

Generally, a petition for habeas corpus relief becomes moot when a prisoner is released from custody before the court has addressed the merits of the petition.  Lane v. Williams, 455 U.S. 624 (1982).  An exception to this general rule arises where a prisoner can show that he will suffer some collateral legal consequences if the conviction is allowed to stand.  Maleng v. Cook, 490 U.S. 488, 491-492 (1989); United States v. Romera-Vilca, 850 F.2d 177, 179 (3d Cir. 1988).  The Court may presume collateral consequences when a litigant challenges a criminal conviction. United States v. Kissinger, 309 F.3d 179, 181 (3d Cir.2002) (citing Sibron v. New York, 392 U.S. 40 (1968)); see also Spencer v. Kemna, 523 U.S. 1, 8 (1998) ("In recent decades, we have been willing to presume that a wrongful criminal conviction has continuing collateral consequences . ...").  Just recently the Court of Appeals for the Third Circuit reiterated this rule where, like the situation at bar, the Petitioner was in custody when he filed his petition and his sentence expired before the District Court ruled on the merits of his claims.  See Leyva v. Williams, 2007 WL

2850363, *4 (3d Cir. Oct. 3, 2007).  Consequently, the Court will proceed to review his Petition.

B. Exhaustion Requirement and Procedural Default

Next, Respondent states that this Court is precluded from reviewing Petitioner's claim because it is procedurally defaulted. In this regard, the provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief.  Exhaustion is not a jurisdictional limitation, however, and federal courts may review the merits of a state petitioner's claims prior to exhaustion when no appropriate state remedy exists. Christy v. Horn, 115 F.3d 201, 206 (3d Cir. 1997).

Beyond questions of exhaustion, a federal court may be precluded from reviewing claims under the "procedural default doctrine." Gray v. Netherland, 518 U.S. 152 (1996).  This doctrine dictates that federal courts will not review a state court decision involving a question of federal law if the state court decision is based on state law that is "independent" of the federal question and "adequate" to support the judgment.  Coleman v. Thompson, 501 U.S. at 750.

It appears that Petitioner presented his claim to the trial court after his appeal rights were reinstated *nunc pro tunc*. It is not clear whether he raised this claim on appeal to the Superior Court where he was granted relief on his sentencing claim.

Notwithstanding, because it is clear that Petitioner is not entitled to federal habeas corpus relief with respect to his claim, this Court need not undertake the lengthy analysis of state law that would be required to determine the applicability of the procedural default doctrine. *See* Lines v. Larkins, 208 F.3d 153, 165 (3d Cir. 2000) (noting that "federal courts should be most cautious before reaching a conclusion dependent upon an intricate analysis of state law that a claim is procedurally barred"), *cert. denied*, 121 S.Ct. 785 (2001). Accordingly, this Court will review the Petitioner's claims under the authority granted in 28 U.S.C. § 2254(b)(2), which provides that a federal court may deny a petitioner's claims on the merits notwithstanding a petitioner's failure to comply with the exhaustion requirement. *See* 28 U.S.C. § 2254(b)(2).

### C. Standard of Review

Section 2254 of the federal habeas corpus statute provides the standard of review for federal court review of state court criminal determinations. 28 U.S.C. § 2254. A federal court may not issue the writ unless it concludes that the state court's adjudication resulted in a decision that was "contrary to," or an "unreasonable application of," clearly established federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner

- 4 -

can rebut only by clear and convincing evidence.   28 U.S.C. § 2254(e).   Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it."   Campbell v. Vaughn, 209 F.3d 280, 289 (3d Cir. 2000).   In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly.   *Id.* (citing Marshall v. Lonberger, 459 U.S. 422, 433 (1982)).

D. <u>Insufficient Evidence</u>

        Petitioner claims that insufficient evidence existed to support his conviction of Criminal Conspiracy to Commit Aggravated Assault.   The Supreme Court specifically has recognized that the Due Process Clause of the Fourteenth Amendment forbids any conviction based on evidence insufficient to persuade a rational factfinder of guilt beyond a reasonable doubt.   *See* Jackson v. Virginia, 443 U.S. 307 (1979).   Where a petitioner challenges his incarceration on the ground that the evidence was insufficient to support his conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319.   Under this standard, "a federal habeas

- 5 -

corpus court faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 326. *Accord* Moore v. Deputy Commissioner(s) of SCI-Huntington, 946 F.2d 236, 243 (3d Cir. 1991), *cert. denied*, 503 U.S. 949 (1992). A federal court must apply this standard " 'with explicit reference to the substantive elements of the criminal offense as defined by state law.' " Orban, 123 F.3d at 731 (quoting Jackson, 443 U.S. at 324 n. 16). *See also* Jackson v. Byrd, 105 F.3d 145, 149 (3d Cir.) (federal habeas courts look to the evidence the state considers adequate to meet the elements of a crime governed by state law), *cert. denied*, 520 U.S. 1268 (1997). The jury, however, weighs the evidence and the federal courts must defer to the jury's resolution of conflicts in the evidence. Jackson, 443 U.S. at 326. Moreover, when a state appellate court thoroughly reviews the sufficiency of evidence, that court's determination is entitled to great weight. Parke v. Raley, 506 U.S. 20, 36 (1993). This deferential test places a very heavy burden on the appellant. United States v. Coyle, 63 F.3d 1239, 1243 (3d Cir. 1995).

The test for insufficiency of evidence is the same under both Pennsylvania and federal law. *See* Evans v. Court of Common Pleas, Delaware County, 959 F.2d 1227, 1233 (3d Cir. 1992), *cert.*

- 6 -

*denied*, 506 U.S. 1089 (1993); <u>Commonwealth v. Bricker</u>, 525 Pa. 362, 581 A.2d 147 (1990) (an appellate court must determine whether the evidence, and all reasonable inferences deducible therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all of the elements of the offenses charged).

Petitioner challenges his conviction of Criminal Conspiracy to Commit Aggravated Assault. Under 18 Pa. Cons. Stat. § 903, a person is guilty of criminal conspiracy if he enters into an agreement with another person or persons that they or one or more of them will engage in conduct that constitutes a crime. Under 18 Pa. Cons. Stat. § 2702 (a)(1), a person is guilty of aggravated assault if he attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life. Where the injury actually inflicted did not constitute serious bodily injury, the charge of aggravated assault can be supported if the evidence supports a finding that the blow delivered was accompanied by the intent to inflict serious bodily injury; such criminal intent may be proved by direct or circumstantial evidence. *See* <u>Commonwealth v. Alexander</u>, 477 Pa. 190, 194, 383 A.2d 887, 889 (1978).

In reviewing this claim, the Trial Court made the following findings.

- 7 -

James Graziano, one of the co-conspirators, testified that he, the defendant, Jeremy DeLong, Adam Reagan, and an unidentified individual designated as John Doe went to a home in Greensburg to purchase marijuana from a person named Warren Myers. Graziano gave $200.00 to Myers but did not receive any marijuana in return. Everyone in the group became upset about not getting anything for their $200.00. Graziano indicated that he expressed to the others his idea that "maybe we should do a shooting at his house or something." Graziano related that they then proceeded to Wal-Mart to buy bullets for a gun that the defendant had. Graziano, Adam Reagan, and the defendant went into Wal-mart and purchased bullets. They then returned by car to Warren Myers' house and got out of the car. Someone grabbed a crowbar and others grabbed weapons from the car. One or more of the group indicated that they were going to attack Warren Myers. Graziano related that all of the conspirators were there, "but, I mean, I don't think everybody was going to actually attack him. You know what I mean? I was probably going to be the one." Graziano remembered someone had a crowbar, someone had a gun, and there were other items. He remembered that at one point the defendant had the gun, and at another point he had the gun, and at another point, Adam Reagan had the gun. After being unable to get Warren Myers to come out of the house, the defendant fired the gun from the car at the house.

Another co-conspirator, Adam Reagan, testified that he, the defendant, James Graziano, Jeremy DeLong and John Doe went to Warren Myers' house in Greensburg to purchase marijuana. After being "ripped off," the group was not happy, and decided to beat up Warren Myers. They gathered clubs and sticks in Youngwood, and then John Doe retrieved a gun from a hotel in Youngwood. They then went to Wal-mart to purchase bullets for the gun. Jim Graziano, John Doe #2 and the defendant went into Wal-mart and purchased bullets.

After discovering that they purchased the wrong bullets, they returned them and purchased bullets that would work. He then related that the group of conspirators returned to Warren Myers' house, and walked towards his home with "sticks and stuff" "to see if we could do anything." He indicated that the weapons were to beat Warren Myers with. When Myers did not come out of his home, they decided to shoot his house up. They got back in the car, drove to the house, the back seat occupants talked about shooting, and shots were fired from the back seat.

. . .

Herein, the Commonwealth has proven that the defendant and his co-conspirators determined to "do a shooting at" the house of Warren Myers, that they were going to attack Warren Myers, that they were going to beat Warren Myers up, that they collected sticks, clubs and a crowbar to beat Warren Myers with, and that they obtained a handgun and bullets and loaded the bullets into the handgun. These various indications are clear evidence of the co-conspirators' intent to attack Warren Myers and to employ deadly weapons in that attack. The defendant himself was identified as being in possession of the loaded handgun that had been obtained to be utilized in this attack. The obtaining of various weapons, including a handgun and bullets to load into the handgun, as well as driving to Warren Myers' home and approaching the home with weapons, are all overt acts in furtherance of the conspiracy to attack Warren Myers in retaliation regarding the failed drug deal. These substantial steps, most particularly obtaining and intending to employ deadly weapons in the attack, show a conscious object or purpose to cause serious bodily injury. Therefore, the Commonwealth has met its burden of proof regarding the conviction at Count I in the information.

Trial Court Opinion (doc. no. 15, pp. 2-5).

- 9 -

The trial court's findings and conclusions are supported by the record evidence.  Petitioner not set forth any basis for this Court to conclude otherwise.  Petitioner has not demonstrated that the Trial Court's determination with respect to his insufficient evidence claim is contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, Petitioner is not entitled to habeas corpus relief from this federal court.

### E. Certificate of Appealability

28 U.S.C. § 2253(c) codifies the standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition.  Section 2253 provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  Petitioner has not made such a showing.  Accordingly, a certificate of appealability should be denied.

### III.     **CONCLUSION**

It is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrate Judges, the parties are allowed ten (10) days from the

date of service to file objections to this report and recommendation. Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

_____
Lisa Pupo Lenihan
U. S. Magistrate Judge

Dated:     October 15, 2007

cc:        The Honorable Terrence F. McVerry
           United States District Judge

           Shaun Edward Kimmel, FT - 6013
           S.C.I. at Rockview
           Box A
           Belle Fonte, PA 16823

- 11 -